**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Douglas G. Furth,** | ) | **CASE NO. 1:06 CV 411** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **John Zanic, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Godwin Pappas Langley Ronquillo LLP's Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Coveniens (Doc. 11). This case arises out of a business dispute.  For the reasons that follow, the motion is GRANTED.

**FACTS**

Plaintiff, Douglas Furth, filed this lawsuit against defendants, John Zanic ("Zanic"), Blue Chip IR Group, Ltd. ("Blue Chip"), Ever-Glory International Group, Inc.[1] ("Ever-Glory"),

_____

[1]    Plaintiff voluntarily dismissed defendant Ever-Glory from this lawsuit.

1

Wilson-Davis & Co. ("WDC"), Inc. and Godwin Pappas Longley Ronquillo ("Godwin"), alleging wrongdoing associated with a stock transaction.

According to the complaint, plaintiff entered into a contract with Zanic and Blue Chip, pursuant to which plaintiff agreed to perform certain services in exchange for stock in Ever-Glory.  Specifically, plaintiff agreed to open new markets and find domestic and international buyers for Ever-Glory's business.  Plaintiff also agreed to purchase a requisite number of shares of Ever-Glory.  In exchange for his services, Zanic was to initially transfer 200,000 of Ever-Glory stock to plaintiff with an additional 800,000 shares to be transferred at plaintiff's request.

Plaintiff requested that Zanic and Blue Chip place the shares into plaintiff's Goldman Sachs account, but they refused.  Instead, Zanic and Blue Chip forced plaintiff to open an account with defendant WDC.  Thereafter, plaintiff transferred only 175,000 of the 200,000 shares into plaintiff's WDC account.  The remaining 825,000 shares were never transferred.  On February 17, 2006, plaintiff instructed WDC to transfer the Ever-Glory shares into his Goldman Sachs account.  WDC refused.  In addition, WDC divulged confidential and personal information regarding plaintiff's account.

Near this same time, Blue Chip, Ever-Glory and Zanic retained defendant Godwin, a law firm.  Through the parties' briefs, it is apparent that Godwin sent a demand letter to plaintiff requesting that he return the Ever-Glory shares he received.  The letter further states that plaintiff engaged in illegal activity and improperly influenced the volume and price of the shares.  In the letter, Godwin refers to the fact that it also provided notice of plaintiff's unlawful activities to WDC.  At some point, at least some of the defendants in this action filed a lawsuit against plaintiff in Utah concerning this matter.

2

Plaintiff filed this lawsuit asserting six claims for relief.  Count one alleges breach of contract against Zanic, Blue Chip and Ever-Glory.  Counts two and three assert breach of fiduciary duty and conversion against WDC.  Count four alleges tortious interference with business relations against Godwin and Blue Chip.  Count five is a claim for defamation and is asserted against Godwin and Blue Chip.  Count six alleges that all defendants engaged in a civil conspiracy.

Godwin moves for dismissal based on lack of personal jurisdiction.  In the alternative, Godwin asks this Court to transfer venue to the District of Utah.  Plaintiff opposes Godwin's motion.

**STANDARD OF REVIEW**

Presented with a properly supported motion to dismiss for lack of personal jurisdiction and opposition, "a court has three procedural alternatives:  it may decide the motion upon the affidavits alone;  it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has discretion to decide which method it will follow. *Id*.  However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists.  *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989).

In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of defendant. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-722 (6th Cir. 2000).  Thus, the plaintiff's burden is only that of making a *prima facie* showing that personal jurisdiction exists in

3

order to defeat dismissal. *Id. See also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction . . . the plaintiff need only make a *prima facie* showing of jurisdiction. . . [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff. . . "). A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citations omitted). Under this standard, dismissal is "'proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction.'" *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir.1997) (quoting *Theunissen*, 935 F.2d at 1458).

## **DISCUSSION**

Godwin moves to dismiss this case on the grounds that the demand letter it sent to plaintiff in Ohio is insufficient to confer this Court with personal jurisdiction. According to Godwin, it has no other ties to the State of Ohio and, as such, personal jurisdiction violates both due process and Ohio's long-arm statute. According to plaintiff, Godwin's actions are sufficient to establish personal jurisdiction in this matter.

The Sixth Circuit has explained the standard for determining if personal jurisdiction exists as follows:

> In dealing with a diversity case, [the court] look[s] to the law of the forum state to determine whether personal jurisdiction exists. *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 376 n. 2(6th Cir. 1968)). The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *See Nationwide Mutual Ins. Co. v. Tryg International Ins. Co.*, 91 F.3d 790, 793 (6th Cir.

4

1993) (citing *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994)).  Although the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause, [the court's] central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.' *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam)).

*Calphalon*, 228 F.3d at 721-722.  *See also, Mast v. Imco Recycling*, 2003 WL 247109 at *7 (Feb. 3, 2003).

Because this Court finds an analysis of due process to be dispositive of defendant's motion, this issue will be analyzed first.

There are two forms of personal jurisdiction for purposes of satisfying constitutional due process requirements: general and specific.  *Kerry Steel, Inc.*, 106 F.3d at 149.  General personal jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant." *Id*.  Specific personal jurisdiction, on the other hand, exposes the defendant to suit in the forum state "only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id*. (quoting *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-415 & nn. 8-10 (1984) and *Third Nat'l Bank in Nashville v. WEDGE Group, Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989)).

Specific personal jurisdiction over a defendant continues to be analyzed under the three-part test established in *Mohasco Industries, Inc.*, 401 F.2d at 381:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise out of the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable.

5

*Calphalon Corp.*, 228 F.3d at 721-722; *Bird*, 289 F.3d at 871.

Plaintiff expressly indicates that he is not alleging that general personal jurisdiction exists over Godwin.  Accordingly, as the parties have not requested an evidentiary hearing, this Court must apply *Mohasco* to determine whether plaintiff has established a *prima facie* showing of specific personal jurisdiction.

According to defendant, the demand letter it sent to plaintiff in Ohio is insufficient in and of itself to establish personal jurisdiction.  In support of its position, defendant provides an affidavit from one of its partners, who avers that it has neither conducted nor solicited business in Ohio, owns no property here, has no bank account, telephone listing or place of business in the State of Ohio.  In addition, Godwin has no employees in this state and has never conducted public relations in Ohio.  In response, plaintiff claims that Godwin's website indicates that it represents Ohio Casualty Group, a corporation headquartered in Ohio.[2]  In addition, plaintiff claims that the letter sent to him in Ohio is sufficient to create personal jurisdiction.

Upon review, the Court finds that it lacks personal jurisdiction over Godwin because plaintiff fails to satisfy the purposeful availment prong of the *Mohasco* test.  As an initial matter, the Court finds that plaintiff's allegation that defendant represents an Ohio corporation is not relevant to ascertaining whether this Court has personal jurisdiction over Godwin.  Godwin avers that it represents this client in Texas, not Ohio.  Plaintiff fails to present any evidence or other information contradicting defendant's assertion.  Rather, plaintiff simply relies on the fact that

---

[2]     The parties develop their analyses of Ohio's long-arm statute in greater detail than their analyses of due process.  This Court, however, has taken some of the applicable facts presented in the long-arm statute and analyzed them under due process.

6

Godwin's client is incorporated in Ohio.  This fact, however, says nothing of Godwin's contacts with Ohio.

The only other evidence relied on by plaintiff is the demand letter plaintiff received in Ohio.  Plaintiff points out that the letter was mailed to and received at his Ohio residence. Plaintiff further claims that his sole place of business is located in Ohio.  The Sixth Circuit, however, has repeatedly held that a single demand letter sent by an attorney cannot confer specific jurisdiction over the attorney when the letter relates to litigation or potential litigation. *See, e.g., The Cadle Co. v. Schlichtmann*, 2005 WL 293666, * 6 (6th Cir. Feb. 8, 2005)(demand letter sent by attorney to Ohio insufficient to establish personal jurisdiction); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)(letter outlining possible claims against defendant is insufficient to establish purposeful availment).  Accordingly, the demand letter is insufficient to confer personal jurisdiction over Godwin.

Plaintiff does, however, allege that the demand letter was also sent to WDC.  It appears that WDC is located in Utah.  Pursuant to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), personal jurisdiction may be found in a state where a defendant intentionally directs tortious acts towards a plaintiff even if the act occurs outside of the forum state.  This is known as the "effects test."  Where the effects test is satisfied, courts must conclude that there are sufficient minimum contacts to confer personal jurisdiction over a non-resident defendant.

In *Calder*, the Supreme Court concluded that a California court had personal jurisdiction over Florida writers and editors who published an allegedly defamatory article concerning a California entertainer.  The Court concluded as follows,

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television

7

> career was centered in California.  The article was drawn from California sources, and the brunt of the harm...was suffered in California.  In sum, California is the focal point of both the story and the harm suffered.

*Id*. at 788-89.

Courts since *Calder*, appear to have narrowed the scope of the "effects test."  For example, in *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir. 1994), the Sixth Circuit addressed whether the district court had personal jurisdiction over the non-resident defendant.  In *Reynolds*, the defendant issued a press release in London claiming that plaintiff, an international athlete, had been suspended for failing two drug tests.  Plaintiff brought suit in Ohio, claiming that the "effects" of the harm were felt in Ohio.  According to plaintiff, he lost sponsorships in Ohio and the tortious conduct was directed at him in this state.  The district court concluded that personal jurisdiction existed over the non-resident defendant and the Sixth Circuit reversed,

> We find *Calder* distinguishable for several reasons.  First, the press release concerned [plaintiff's] activities in Monaco, not Ohio.  Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing was done in France.  Third, [plaintiff] is an international athlete whose professional reputation is not centered in Ohio.  Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report.  Fifth, Ohio was not the 'focal point' of the press release.  The fact that [defendant] could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.

*Id*. at 1120.

In this case, plaintiff does not invoke the "effects test" in any fashion.  Although plaintiff argues in passing that the letter was published to WDC and additionally points out that he suffered harm as a result of Godwin's "tortious" conduct, plaintiff conducts no analysis of this issue and fails to analyze any of the *Reynolds* factors.  The clear focus of plaintiff's briefs is on

8

the demand letter sent to plaintiff in Ohio. This Court will not *sua sponte* address issues not raised by the parties. This is especially so given that it is plaintiff's burden to demonstrate that this Court has personal jurisdiction over Godwin. Absent any argument or analysis from plaintiff, the Court finds that plaintiff fails to establish that the effects test is satisfied.[3] As a result, defendant lacks the minimum contacts necessary to satisfy due process and Godwin is not amenable to suit in Ohio.

Having concluded that Godwin lacks the minimum contacts necessary to satisfy due process, personal jurisdiction is lacking and Godwin is dismissed.[4]

**CONCLUSION**

For the foregoing reasons, Defendant Godwin Pappas Langley Ronquillo LLP's Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Coveniens is GRANTED. Godwin Pappas Langley Ronquillo is DISMISSED for lack of personal jurisdiction.

---

[3]     Even if this Court were to *sua sponte* address the "effects test," the Court finds that, as presented, it lacks personal jurisdiction under *Reynolds*. In this case, assuming the letter was sent to Utah, the contents of the letter include accusations that plaintiff fraudulently induced certain defendants to transfer shares of Ever-Glory stock. While it appears that plaintiff performed services for defendants in Ohio, the transfer of stock did not occur in this state. Thus, the letter is not centered entirely around plaintiff's activities in Ohio. Moreover, there is no allegation that plaintiff's business reputation is centered in Ohio or that anyone in Ohio (other than plaintiff himself) actually learned of the contents of the letter. Absent additional argument, the Court finds that plaintiff fails to satisfy the effects test.

[4]     The Court need not address the parties' arguments that personal jurisdiction is also lacking because Ohio's long-arm statute is not satisfied. In addition, having concluded that personal jurisdiction is lacking, the Court need not reach Godwin's alternative argument, *i.e.*, that venue should be transferred.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan                              
PATRICIA A. GAUGHAN
United States District Judge


Dated:   6/22/06

10